Good morning and welcome to the 11th circuit. I think you're all familiar with our timing and lighting system. I would just ask that you please comply with it. Obviously, if we ask you questions and it takes you beyond your time limit, you should go ahead and please answer the question fully. We wouldn't ask it if we weren't interested in your answer. But other than that, if you would please stick to the time limits, we would appreciate it. All right, we will begin today with McKathan v. United States of America. If we support, when McKathan was indicted in November of 2014 for the same conduct that caused his SRT revocation in the previous month, Defense Counsel really had only two things to deal with. One is whether the statements and evidence that were the basis for the SRT revocation could be used in the criminal proceeding that followed. That's one. The other is his sentencing exposure. It was that narrow. Defense Counsel bungled both aspects. As to the sentencing, the habeas court granted relief and he was resentenced. But the habeas court denied relief on a substantive claim saying that the Fifth Amendment claim would have been unsuccessful and thus defendant did not suffer prejudice as a result. As you will recall from the record, Defense Counsel never even considered a Fifth Amendment argument that the statements that McKathan was made to his probation officer. If the statements had been suppressed, would the cell phone still come in? The cell phone may. You've got big problems if the cell phone comes in. Well, that presumes that the authorities would be able to access it. As you recall, the only reason that they were able to access the cell phone was because he provided the pin. He was required to provide the pin number. That's testimonial like combination to a safe. And so, therefore, that was something he was required to do under his supervised release. Isn't that right? Precisely. And that's why he still had a Fifth Amendment privilege that could have been asserted in the criminal case. Let me ask you that we got one issue before us in this case. We granted COA on one issue and that is whether or not the defendant was prejudiced as a result of deficient performance. All right. So, we're talking about prejudice. When the defendant claims that his counsel's performance deprived him of trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that but for counsel's professional errors that he would not have pled guilty and would have insisted on going to trial. A defendant must convince the court that a decision to reject a plea bargain would have been rational under the circumstances. How did he do that in this case? How did he meet that standard he has to meet in this case? Yes, and if I could just read one more quote from the Lee case, which is the controlling case, I'd submit. Court should not upset a plea solely on post hoc assertions that a defendant about how he would have pled but for the attorney's deficiencies. Court should look instead to contemporaneous evidence to substantiate a defendant's expressed preferences. That is how he makes out that showing. There is no question on this record that beginning prior to indictment at the SRT proceeding, he asked his lawyer, what can we do about this? It doesn't seem right that they should make me, as a condition of SRT, give incriminating evidence and then later use it. They anticipated an indictment. That was not a secret. It came the next month. That's where it started. His lawyer then brought him a plea bargain early. The indictment was in November, arraignment in December. In January, he comes with a plea agreement that says, here, you sign your plea guilty, do the best you can. No, he rejected the plea agreement. That's contemporaneous evidence that he wanted to litigate. He then filed a pro se motion for another lawyer. He said, I want a different lawyer, and the reason I want a different lawyer is I want a motion to suppress. He then has a hearing before the judge, a magistrate judge, and that position is made clear. The magistrate judge's order in the record says the reason he wanted a new lawyer was to file a motion to suppress. That's contemporaneous evidence of his desire to litigate the issue. This isn't something after the fact, he gets up to prison and says, I have second thoughts. This is at the time. The judge appoints a new lawyer and says, file a motion to suppress. The time goes by. The captain is in Escambia County, which I'm sure the court is well aware is about 90 miles away from Mobile. He gets worried that the lawyer won't do it. He files his own motion to suppress, a pro se motion. He says, I want to suppress the statements and the evidence derived from the statements. It's a pro se motion, but it's not too bad. That gets filed in the court that's in the record. His lawyer then files a pro forma, boilerplate, begrudging motion to suppress because the court told me to do it and I'm going to do it. Under the Fourth Amendment. Fourth Amendment. That doesn't even see the only issue in the case. And that was the Fifth Amendment issue. Doesn't even see it. Doesn't consider it. Doesn't get a transcript of the SRT proceeding, which laid out exactly what the basis for the new indictment was. So then, because of that, they strike McAfeen's pro se motion, which is actually better because it talks specifically about statements. The judge says at the oral argument on the motion, or the argument on the motion to suppress, or the hearing on the motion to suppress, that, you know, giving an argument, you don't even have an argument. And of course, counsel didn't have an argument because they didn't even, never saw the argument. Never raised the argument. Well, the government then takes the plea bargain off the table and punishes them for trying to litigate the issue. Says a mid-range, mid-range plea agreement, mid-guideline range sentencing recommendation, which was absolutely worthless. If counsel had done the guidelines, she would have recognized the guidelines were five years below the statutory minimum mandatory. She had all that to play with. There was no jeopardy. There was no reason to take an agreement. There was no reason not to litigate the issue, except to get it out of the way. Sign this plea agreement. Do it. And we know that it was bad advice because when a similar sentencing mistake, guideline application mistake, appears in the PSR months later, she doesn't pick it up. Of course, the government can fast stay around that. But aren't you focusing on the guideline range for the one count for which he pleaded guilty? If he had gone to trial, he would have faced other counts and possibly consecutive sentences. There's the possibility of that. Of course, there's a statute that says, what was it, 3583, I don't, that says when sentences are imposed on the same day, there's a presumption that they run concurrently and not consecutively. So there's a bias. That's one. Two, under the guidelines, the underrelevant conduct, all of the misconduct, even in the dismissed counts, was considered in the guideline range. Three, under the grouping rules of the guidelines, the conduct, even if he had been convicted of all the counts, they would have been grouped for guideline purposes. And I think I pointed out that it's extremely rare in the Southern District of Alabama to have anything other than a guideline sentence for an upward variance. Extremely rare. So sure, there's a hypothetical risk. But if that's the standard, any time there's a multi-count indictment and somebody pleads to one count, they got a break. Because they avoided the hypothetical possibility of consecutive sentences. That's not realistic, and it's not realistic under these facts because the guidelines probably calculated were way below the minimum. There's nothing particularly aggravated about it. It's a 15-year minimum mandatory because of the recidivism. Yeah, there's a hypothetical jeopardy. But it's certainly not the jeopardy that Padilla faced or Lee faced if they would have gone to trial and lost. And this is, I think it's apples and oranges. I really don't see it. Let me ask you one more thing. Yes, sir. There was an evidentiary hearing in this case, is that correct? There was. Didn't both counsel, both Knight and Powell, testify at that evidentiary hearing? They did. And didn't they both testify that they didn't see any value in pursuing a Fifth Amendment theory given the fact that the evidence against your client was so overwhelming that he possessed the child pornography that there wouldn't have been any reason to do that? And if the district court credited that testimony, what are we supposed to do with it? That testimony does not appear in the record. What appears in the record is what Chris Knight said. I didn't think about it. I guess I should have. Maybe I should have. That was their retrospective view of the merits of a Fifth Amendment suppression-based, you know, a Fifth Amendment-based suppression issue had they thought of it at the time. No, the record's clear on that, that neither of them had the faintest idea that there was a Fifth Amendment issue in this case. Neither. Did both of them indicate that Murphy wasn't on their radar? That Murphy was not on their radar. And that is the case. That's the leading case. And it comes, the first three minutes of research on it, you know, you put in probation and Fifth Amendment and that's the first case. And it's troubled courts. I mean, it's an interesting, the Fifth Amendment part is really not before the court because it wasn't decided on performance grounds. It was decided on prejudice grounds. And in response, going back to your, to the judge's position of what's in the record that says that he can meet the burden, that contemporaneous... Let me, I'm sorry to interrupt, but the COA in this case, though it talks about prejudice, does it not also say on the issues, the issues addressed in the opinion, plural, and didn't, I mean, I thought both of your briefs addressed the merits of both of the arguments. Here's, the court decided the habeas claim, denied relief based on the prejudice prong. But it's clear from the cases that whether the decision to reject the plea and go to trial or proceed is rational or not, depends in some way on the merits of the claim that was foregone. So, So part of it is inextricably intertwined. And that's why, and that's why I think I had to treat the merits of such a claim and to show that it's viable, it's an issue that's troubled the courts, it's factually difficult, it's legally interesting, and of course the amendment to the Chapter 7 of the Guidelines recognizes that this was after the fact. Right. That supervised release condition is a real problem. Okay. Thank you, Mr. Madden. You've reserved five minutes for rebuttal. Thank you. And Mr. Bodner, we're going to give you three extra minutes because I took him over. May I please have the court? Counsel. Why wasn't he prejudiced by counsel's not filing a Fifth Amendment motion to suppress? Your Honor, he was not prejudiced. Why? And it's not just the United States arguing that. That is what the district court, after having a hearing, after having multiple briefings on this, found. Chief Judge DuBose explained the probation officer had reasonable suspicion and the right to search the petitioner's phone. The reasonable suspicion existed independently of any statement made by the petitioner during the interaction at the home inspection. But the problem, that may or may not be the case, but the problem is that the probation officer would not have been able to search the phone if Mr. McAfeen had not provided the pen. Isn't that right? Potentially so. We don't know what other steps the probation office could have done. He did have an obligation to abide by the instructions and, in fact, he did do so. We don't know here what probation could have or would have done had he refused to do so. But isn't that a problem? Because then we can't say that it was inevitable that it would have been discovered. Potentially so. But why is that not a problem if we can't say that it's, in fact, didn't the district court conclude that it wasn't inevitable and didn't the government concede that? They did in a certain context. I believe when you read back through that portion of the evidentiary hearing where the court finds it is not inevitable discovery. What she's talking about there in the case that she's relying on is inevitable discovery is almost a savings clause of something illegal was being done, an illegal search was being done, but it would have been inevitably discovered and, therefore, almost like a Leon savings clause. But the court had just found that there wasn't any violation of the Fourth Amendment and, therefore, essentially the way the United States reads it or we read it now or I read it is that the court is saying there's no need for an inevitable discovery doctrine here because I'm not finding that there was anything wrong with the initial search. Tell me, then, how would it have been inevitable that it would have been found? Let's assume that the government was not able to get the pen. How would it have been inevitable that it would have been found? Assuming that the government was not able to get the pen and assuming that there is no other way to get into the phone then, no, there would not have been a way to see those images. Has the government proffered any other way to get into the phone other than the pen? Not as part of this the lead up to this case. No, Your Honor, we haven't. So it all depends, the inevitability argument all depends on the idea that the government would have been able to get the pen. Yes. But, Your Honor, there's also the finding that the court made in the motion to reconsider when she did go through the viability of the Fifth Amendment claim and in that the court found that after addressing Minnesota v. Murphy that she did not find that putting in the pill putting in the pen was compelled. Except so the problem with that that I see with that possibly is the timeline the sequence of events the problem is that well it's Murphy and the timeline right because if Murphy under Murphy it says if the alternative to speaking truthfully would be to go to prison for a violation of your supervised release then there's compulsion. Do you agree with that? Yes. Okay. So his argument Mr. McAfeen's argument is well when you asked me for the pen that is protected speech under Murphy and when I provided it only because I was compelled to do so because if I did not do so I was going to be sent to prison for a violation of my supervised release for not answering my probation officer's questions and so the only way that the pen is released is pursuant to this compulsion. I mean that's what his argument is. Why is that not the case? That was argued before the district court already. The court found that it was not compulsion. I understand but why? That's where my problem is right? Because under Murphy it's not a factual the only factual question is whether the alternative to answering the question was going to jail and if the alternative to answering the question was going to jail then there's compulsion. It seems like a legal issue. So I guess my question to you is number one if you think I'm mistaken about that let me know why this is a factual issue and not a legal issue under Murphy and number two if I'm not mistaken about that then how is there not compulsion to give the pin? I think your honor it's part a factual and part legal argument that in this case the court found and citing to Murphy that this while the petitioner mentioned that subjectively he did feel that he was in essentially the trick bag that he references of having to answer or be revoked the court found based on the language in his supervised release condition that that wasn't an objectively reasonable thing here's the problem we have a case called Robinson in this circuit which had basically the same exact language and we said in that case that because the compulsion issue was not at issue in that case we said well if you don't answer the questions then you go to jail that's how it works so in light of Robinson which says that under that language if you don't answer the questions you go to jail why was it not error for the district court to hold otherwise and while the court did not specifically differentiate it from Robinson I think one differentiating factor can be the language that's actually in the supervised release conditions so in Robinson the relevant part was to give an account of himself and respond completely and truthfully to questions asked by probation officer whereas it's more narrow shall answer truthfully all inquiries such as you're not giving a full account of everything you're  for or asking for something the inquiry was can you open the phone can you give the pin so to answer that truthfully he would have to say yes and provide it right how does that take us out of Robinson because his alternative is not answering the question and going to jail right yes potentially the court found that actually but why is it potential I mean what makes it potential that is a condition of a supervised release and we've said in Robinson if you don't comply with the conditions of your supervised release you go to jail on that but that is of course what you say in terms of Robinson they can be revoked so don't I mean since we're bound by Robinson don't we have to accept that when we're reviewing this? I think yes unless we tailor Robinson to the specific language that was used in that particular but what is the distinction like I think I could agree with you if for example there were something in the language of the supervised release instructions for Mr. McCathin versus Mr. Robinson that somehow relieved Mr. McCathin of the idea he would go to jail if he didn't answer the questions but I don't see that in there. I don't see any difference between the language in McCathin and the language in Robinson on that issue. Yes, there may be different languages whether he has to answer completely and he did answer that one statement and he did go and get into the phone. But we're also dealing with the issue of could there have been another way of getting in the phone while there has been nothing proffered on the record for that. This is not something unusual for the United States to be able to go and get into a phone. We didn't need to bring that up or discuss it because it was a non-issue. He did allow them to get in the phone. I'm not sure it's a non-issue because if your argument is that it was inevitable they would get into the phone anyway, you have to show why that's the case. I'm not sure that's on the record somewhere. So that brings us back to was he compelled under Murphy and Robinson to provide the PIN. If he was, then we have a problem. Unless it's inevitable the government would have gotten in anyway. I don't know if you want to address that. The government has tools and methods and has used them in many cases to get in before. There's nothing on this record indicating that this is what the steps the probation officer would have taken had they not been given permission to get into the phone. That probably was not raised in the record because it was a non-issue at the time. In Robinson there's one sentence I'm curious about. Is that any distinguishing feature? It's the paragraph that begins the probation officer has an obligation to inquire into possible violations of the probation agreement. And then toward the end of that paragraph or probably middle of the paragraph. When Robinson failed to reach the probation officer, he committed a probation violation. The issue is not invocation of the privilege but the failure to report. I think that can be a distinction here, your honor. How do we distinguish between the how could you fail to report and still not be compelled? That's kind of the issue. In Robinson, let me ask you this, would you agree that in Robinson no one raised the fifth amendment issue? It wasn't before the court they weren't considering it. How could you fail to report and still not go to jail? I think part of that is that not every single probation violation automatically ends up with revocation. We have issues all the time where it's brought to the court and it doesn't automatically revoke. But if we're holding that the reason that revocation was appropriate was because he failed to report in response to inquiries, would you agree that's what Robinson holds? Yes. How could you not fail to report so you would avoid the Robinson problem and still not respond to the question about the pen? Is there a way to do that? Maybe there is. So not report. There may be a way at this very moment. I can't think of a way. We do seem to be in a very narrow window here because it is a singular question. I do want to point out one other issue about viability, which is something that Mr. Arthur  was talking about. I agree with Mr. Madden that much of the prejudice prong is tied in with the deficiency prong. If the attorneys gave up a viable argument, that could fall deficient. That goes in as Mr. Arthur Madden was talking about the prejudice prong because the defendant could have been prejudiced by his attorneys advising him to plead guilty when he had a viable claim. We had briefing on this. This was ruled on by the court. If he didn't have a viable claim, then contrary to what was explained before about what went on contemporaneously in terms of whether or not he would go to trial to litigate an issue or whether he would have pled guilty, the facts are when he did not have any more viable claim after his fourth amendment argument was rejected by the district court, there was no viable fifth amendment claim. The district court has said after numerous process and briefings and hearings on this is that the district court agrees that there was no viable fifth amendment claim. There was no deficient performance by Cindy Powell. He pled guilty and there is no rational reason to believe that if at contemporaneous time when he believed there was no viable way forward he pled why he would do it now. I think that's where the district court comes down on the deficiency side as well. And if there's no further questions, we'll see the remainder of our time. Thank you, Mr. Bodden. Thank you, Your Honors. The reason that he did not believe that there was any other way forward is because counsel didn't tell him and they had a duty to. It's that the argument is about a hypothetical Fifth Amendment motion to suppress that had it been filed how it would have played out. That's not what this court can do. We can't try a Fifth Amendment issue here. Although the viability of the Fifth Amendment claim is relevant to our inquiry into whether or not there was prejudice. Yes, but not, as their briefing says, guaranteed success. That isn't the standard. The standard is whether under the circumstances it would have been the defendant must convince the court a decision to reject the plea bargain would have been rational under the circumstances. And it would have been rational if he understood that there was a Fifth Amendment claim. Here's how it works. Here's how Minnesota v. Mercury works. We'll have a suppression hearing based on the Fifth Amendment, not bits and pieces from a Fourth Amendment suppression hearing on a motion that is pro forma at best. That's the problem with the way the district court handled the merit side of the habeas issue. It didn't have a record. It didn't have a Fifth Amendment motion. The issue wasn't litigated. And it's because it wasn't litigated that he should have habeas relief. It's because it wasn't litigated that he received ineffective assistance from counsel. That's where we have to get back to that. And I think it's too late to try and patch it together at this juncture. And with that, I appreciate it. Thank you. Let me ask you one last question. Suppose you're right and we vacate the district court's case and we're finding that your client was prejudiced and we send this case back and could new counsel file then a Fifth Amendment suppression motion and if the motion is lost, then what happens? Well, I think Play it out with me. What procedurally would happen? I think that if this court were to reverse and remand, I think it would be to address the performance problem. I don't think that was squarely dealt with in the district court. That's why my prayer for relief kind of goes both ways because I don't know if I want to argue both things. I don't want to say this court should decide the merits and say this court doesn't have to decide the merits. I don't think it can. I don't think the record is right. I think you have to consider the merits as to whether rejection would be the best           I think you have to consider the merits as to whether the court can do the best to find the merits. We look at the rest of the probation file. We develop the case like it should be to show that McAfeen was compelled to respond to the probation officer's instructions as he says in his testimony. I instructed him to give me the phone. He gave the phone as instructed. Once I received it, I noticed it required a pin. I gave the phone back to him and asked him to put in the pin for me to gain access. So that issue would be fleshed out in a suppression hearing if the court determined that his statements were compelled and he could assert the fifth amendment privilege to the introduction of his statements. The government would have to make a decision whether they could go forward or not. You have to understand when McAfeen was serving a lifetime term of supervised free release. I thank you for answering my question. Thank you. Thank you. We note that you were court appointed. We appreciate      Thank you counsel. Okay. Thank you. Thank you. Thank you. Thank you. We have a time limit of 45 minutes. The